*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0299p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee, by and through its
servicer Countrywide Home Loans, Inc.,
             *Petitioner-Appellant,*

          *v.*

KATHERINE MARIE TUCKER; BEVERLY M.
BURDEN, Trustee; OFFICE OF THE U.S.
TRUSTEE,
             *Respondents-Appellees.*

No. 09-5867

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 08-00199—David L. Bunning, District Judge.

Argued: August 5, 2010

Decided and Filed: September 15, 2010

Before: SUTTON and McKEAGUE, Circuit Judges; JONKER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Nathan L. Swehla, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellant. John M. Simms, ATKINSON, SIMMS & KERMODE, Lexington, Kentucky, Anne Marie Regan, KENTUCKY EQUAL JUSTICE CENTER, Louisville, Kentucky, for Appellees. **ON BRIEF:** Nathan L. Swehla, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellant. J. D. Kermode, ATKINSON, SIMMS & KERMODE, Lexington, Kentucky, Anne Marie Regan, KENTUCKY EQUAL JUSTICE CENTER, Louisville, Kentucky, Michael L. Rice, Erlanger, Kentucky, James P. McHugh, LEGAL AID OF THE BLUEGRASS, Covington, Kentucky, for Appellees.

---

[*]The Honorable Robert J. Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

1

## OPINION

JONKER, District Judge. Deutsche Bank holds an undersecured home mortgage from Katherine Marie Tucker, the Chapter 13 debtor. Ms. Tucker was in arrears on the debt at the time of filing, but wants to retain possession and control of her home. Accordingly, she proposes in her Chapter 13 plan to cure the arrearage, as required by 11 U.S.C. § 1322(e). The question is whether the proper arrearage amount includes fees and costs permitted by the contract terms and applicable nonbankruptcy law even though Deutsche Bank is undersecured. This Court accepted certification of the question from the district court to resolve a conflict on the issue in the decisions of the bankruptcy courts in this Circuit. *Compare In re Thompson*, 372 B.R. 860, 864 (Bankr. S.D. Ohio 2007) (holding that a Chapter 13 debtor who proposes to cure a default must pay everything required by the underlying agreement and nonbankruptcy law regardless of whether the debt is undersecured), *with In re Evans*, 336 B.R. 749 (Bankr. S.D. Ohio 2006) (holding that a Chapter 13 debtor need only cure the amount of the default that is secured as defined in 11 U.S.C. § 506(b)). We now resolve the conflict by applying the plain language of section 1322(e). That language requires the debtor to include the fees and costs in the arrearage cure amount notwithstanding Deutsche Bank's undersecured status because the fees and costs are permitted under the agreement and nonbankruptcy law.

## BACKGROUND

In August, 2004, Katherine Marie Tucker executed a Promissory Note in the amount of $104,550.00 in favor of Novelle Financial Services. As security for the Note, Ms. Tucker and her husband, Charles Tucker, executed a mortgage on their house. Novelle Financial Services assigned its interest in the Note and mortgage to Deutsche Bank National Trust Company. In February 2008, Ms. Tucker filed her Chapter 13 bankruptcy petition. On her bankruptcy schedules, Ms. Tucker listed the value of the house at $88,000.00.

No. 09-5867        *Deutsche Bank Nat'l Trust Co. v. Tucker, et al.*                    Page 3

Deutsche Bank filed its secured proof of claim for $103,328.84. The Proof of Claim contained Deutsche Bank's pre-petition arrearages totaling $23,286.89. The arrearage claims included fees and costs totaling $4,660.42: Attorney Fees to prepare the Proof of Claim of $200.00; Previous Bankruptcy Fees of $250.00; Attorney Fees for the Foreclosure of $1,415.00; Property Inspections of $29.00; and Escrow Advances in the amount of $2,766.42. The underlying note and mortgage permitted the holder to assess these fees and expenses. No one disputes the reasonableness of the fees and costs.

Ms. Tucker objected to Deutsche Bank's Proof of Claim. She contended that the proper arrearage could be no greater than $18,626.47 and that the remaining amount of $4,660.42 in fees and expenses should be treated as unsecured amounts under *In re Evans*, 336 B.R. 749 (Bankr. S.D. Ohio 2006). *Evans* held that the arrearages under section 1322(e) included fees and costs only to the extent that they were also secured amounts under section 506(b). In her Chapter 13 plan, the debtor proposed to cure only Deutsche Bank's $18,626.47 in arrearages, rather than the full amount of $23,286.89, which included the disputed fees and expenses. The Bankruptcy Court sustained Ms. Tucker's position under *Evans*. Deutsche Bank appealed the Bankruptcy Court's order to the United States District Court for the Eastern District of Kentucky, which certified the issue under 28 U.S.C. § 158(d)(2) for direct appeal to this Court. This Court accepted. The case now is properly before this Court under 28 U.S.C. § 158(d)(2)(A)(i), (ii), and (iii).

**DISCUSSION**

What amounts are properly part of an arrearage cure under section 1322(e) when the debtor is undersecured? In particular, are fees and costs that are allowed by the contract documents and applicable nonbankruptcy law amounts that are part of the arrearage cure amount, even when the debt holder is undersecured under section 506(b)? This question requires the Court to determine the interaction of two Bankruptcy Code provisions: 11 U.S.C. § 506(b) and 11 U.S.C. § 1322(e). This Court reviews de novo questions of statutory interpretation, statutory application, and a bankruptcy court's conclusions of law. *In re Ruehle*, 307 B.R. 28, 31 (B.A.P. 6th Cir. 2004).

No. 09-5867           *Deutsche Bank Nat'l Trust Co. v. Tucker, et al.*                    Page 4

The pivotal issue in this case is one of statutory construction. The language of the statute itself is the starting point in statutory interpretation. *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005). Unless they are otherwise defined, the words in a statute "will be interpreted as taking their ordinary, contemporary, common meaning." *Id.* When "construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses its legislative purpose." *Id.* at 660-61 (internal quotation marks omitted). If the statutory language is unambiguous, "the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Id.* at 661 (quotation omitted).

In this case, the language Congress used is unambiguous: Congress expressly resolved any potential conflict between section 1322(e) and section 506(b) in favor of section 1322(e):

> **Notwithstanding . . . section[] 506(b)** . . . of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e) (emphasis added). When it comes to cure under section 1322(e), Congress says that section 506(b) is beside the point if the parties' agreement says otherwise. This obvious reading of the statute is not surprisingly the one virtually all of the courts to consider it have applied, including the Third Circuit and the Bankruptcy Appellate Panel for the Second Circuit. *See Key Bank of N.Y. v. Harko*, 211 B.R. 116, 122 (2nd Cir. B.A.P. 1997); *Smiriglio v. Hudson United Bank*, 98 F. App'x 914, 915-16 (3rd Cir. May 11, 2004) (unpublished opinion); *see also In re Thompson*, 372 B.R. 860, 864 (Bankr. S.D. Ohio 2007) (collecting additional cases). *See* 2 Keith M. Lundin, CHAPTER 13 BANKRUPTCY, 3d Ed. 138-6 ("Ordinary canons of statutory construction would interpret the 'notwithstanding' in § 1322(e) to mean that § 1322(e) controls whether and to what extent fees, costs and other charges are allowed to cure default with respect to all mortgages entered into after October 22, 1994—including oversecured mortgages . . . ."); *id.* at 138-5 ("The extent of security is irrelevant to new § 1322(e)—even if the residential mortgage is entirely unsecured, if the plan cures

Case 08-20295-tnw    Doc 120    Filed 09/22/10    Entered 09/22/10 14:36:36    Desc Main
                  Document      Page 5 of 8

default, the mortgage holder will be entitled to recover whatever charges are allowed by the underlying agreement and nonbankruptcy law."); 8 COLLIER ON BANKRUPTCY 1322.19 ("By its introductory language specifically mentioning [§ 506(b)], section 1322(e) makes clear that [§ 506(b)] ha[s] no applicability in a cure situation, in which the debtor is merely keeping the original contract in place and bringing it up to date.").

Despite the plain meaning of the statute, the Bankruptcy Court here, relying on *In re Evans*, concluded that the arrearage amount under section 1322(e) is limited to the creditor's secured status under 506(b). *Evans* and the Bankruptcy Court deemed the word "notwithstanding" in section 1322(e) to be ambiguous because in their view it could have either a supplanting meaning or a supplementary meaning. The supplanting meaning would be that section 506(b) has no applicability in a Chapter 13 cure situation. The supplementary meaning would be that a creditor must meet section 1322(e)'s requirements in addition to meeting the requirements of being fully secured under section 506(b). *In re Evans*, 336 B.R. at 753-54. The Bankruptcy Court then referred to legislative history as discussed in *Evans*. According to *Evans* and the Bankruptcy Court here, "the purpose of § 1322(e) was not to supplant but to supplement the requirements of § 506(b)." *Id.* at 755. Accordingly, *Evans* held that only secured creditors first meeting the requirements of section 506(b) were entitled to add interest, costs, and fees to their arrearage claims under section 1322(e). *See id.*

This conclusion conflicts with the plain language of the statute. It is hard to imagine a clearer statement of congressional intent than "[n]otwithstanding . . . section[] 506(b) . . . the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). The term "notwithstanding" is defined as "without prevention or obstruction from or by" or "in spite of." *In re Thompson*, 372 B.R. at 863 (quoting Webster's *Third New International Dictionary* 1545 (1981)). By using the term "notwithstanding" in section 1322(e), Congress expressly precluded section 506(b) from applying to a Chapter 13 cure situation where the parties have a contrary agreement. To arrive at the interpretation in *Evans*, additional terms must be implied into the language of section

No. 09-5867         *Deutsche Bank Nat'l Trust Co. v. Tucker, et al.*                    Page 6

1322(e), such as "[n]otwithstanding . . . *that a creditor has met the requirements of section[] 506(b).*" 11 U.S.C. § 1322(e) (italicized words added). That implied language is simply not part of the statute. In effect, the conclusion of *Evans* and the Bankruptcy Court here rewrites the statute. It replaces "[n]otwithstanding . . . section[] 506(b)"–the actual words of Congress–with "subject to section 506(b)."

Ms. Tucker contends that "notwithstanding" is ambiguous because it has different meanings in different provisions of the Bankruptcy Code and even in section 1322(e) itself. The contention is without merit. In each instance, the term "notwithstanding" functions in its normal supplanting way: it simply excludes application of the referenced section. *See, e.g.*, 11 U.S.C. §§ 1322(a)(4), (b)(5), (c), (e). Of course, the particular practical implication of what is excluded varies with the context, but the meaning and operation of the word "notwithstanding" does not change. Section 1322(c), for example, uses "notwithstanding subsection (b)(2)" to affect the timing of certain mortgage payments, despite section 1322(b)(2)'s general provision preventing modification of mortgage loan terms. And within section 1322(e) itself, "notwithstanding" functions in a way that requires the Chapter 13 plan to establish the proper arrearage cure amount without reference to section 506(b) (governing secured status), section 1322(b) (governing modification of mortgage terms), and section 1325(a)(5) (establishing the requirements for a confirmable Chapter 13 plan), to the extent those sections conflict with the mortgage agreement and state law. But this does not mean, as appellee claims, that these three sections will never apply in a cure situation. They remain in effect for all purposes other than determination of a cure amount under the terms of the parties' contract and applicable non-bankruptcy law. Accordingly, under the plain language of the statute, a creditor meeting the requirements of section 1322(e) may add interest, fees, and costs that are properly recoverable outside of bankruptcy, regardless of whether the creditor is fully secured under section 506. *See id.* Because the statutory language is unambiguous, "the judicial inquiry is at an end, and the plain meaning of the text must be enforced" without reference to the legislative history. *See Plavcak*, 411 F.3d at 661 (quotation omitted).

Case 08-20295-tnw    Doc 120    Filed 09/22/10    Entered 09/22/10 14:36:36    Desc Main
                    Document      Page 7 of 8

No. 09-5867         *Deutsche Bank Nat'l Trust Co. v. Tucker, et al.*                Page 7

Even if we accepted Tucker's invitation to consider the legislative history of section 1322(e), that would not change the outcome. According to a House Report, Section 1322(e) was enacted to "overrul[e] the decision of the Supreme Court in *Rake v. Wade*." H.R. Rep. No. 103-835, at 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364. In *Rake*, the Supreme Court relied on §§ 506(b), 1322(b), and 1325(a)(5) to hold that creditors could receive interest on mortgage arrearages in a Chapter 13 plan, even if the agreement was silent or state law prohibited it. By overturning *Rake*, Congress wanted to eliminate the "windfall to secured creditors at the expense of unsecured creditors." H.R. Rep. No. 103-835, at 55. All of this, Tucker argues, shows that Congress wanted the new requirements in section 1322(e) to supplement, not supplant, section 506.

The problem with this argument is Congress's "actual" intent is not that easy to discern. In *Rake*, the creditor was oversecured and the Court thus never addressed—it had no reason to address—the rights of undersecured creditors. *See id.* at 466. The relevant legislative history for § 1322(e) simply mentions "secured creditors" and says nothing about unsecured creditors or whether the extent of the security matters. *See* H.R.Rep. No. 103-835 at 55 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3364; S.Rep. No. 103-168 at 53 (1993). Congress's concern about *Rake* had nothing to do with whether a creditor was oversecured but with *Rake*'s allowance of "interest on interest payments, and interest on the late charges and other fees, even where applicable laws prohibits such interest and [it] was not contemplated by either party in the original transaction." H.R.Rep. No. 103-835 at 55.

The most that can fairly be inferred from this legislative history is that Congress wanted § 1322(e) to overrule *Rake*. But Congress could do so in two equally plausible ways: (1) tack on two new requirements for oversecured creditors like the one in *Rake*, or (2) create a new and broader rule that applies to all secured creditors, whether oversecured or undersecured. The legislative history does not say which path Congress chose, but the open-ended use of "notwithstanding" in the text suggests it chose the latter. And that suffices to rely on the language of the statute. *See Conn. Nat. Bank v.*

*Germain*, 503 U.S. 249, 254 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

## CONCLUSION

Ultimately, the parties defending the decision below are relying on neither the statutory text nor even the legislative history of the statute, but rather their own assessment of what Congress' motivation must have been. Of course, the Court is bound to apply the plain language Congress used. That language has only one unambiguous meaning: when it comes to curing a default in a Chapter 13 plan, the debtor has to include all the amounts required under section 1322(e) "[n]otwithstanding . . . section[] 506(b)." 11 U.S.C. § 1322(e). Accordingly, Deutsche Bank's fees and advances, which were allowed under the parties' agreement and applicable nonbankruptcy law, must be included in the cure amount. The Bankruptcy Court's decision to the contrary must be **VACATED** and the case **REMANDED** for proceedings not inconsistent with this opinion.